PROSPECT PARK & C. I. R. CO. v. BROOKLYN, B. & W. E. R. CO.
et al.

(Supreme Court, General Term, Second Department. February 11, 1895.)

**1. RAILROAD CONTRACTS—VALIDITY—ABANDONMENT OF FRANCHISE.**
    A contract between two street railroad companies to connect their tracks at a certain point, and establish "a joint railway depot and terminus" at the terminus of a third railroad, is valid, though it requires the abandonment of so much of the track of one of the two companies as extends beyond such depot in a street along which a third railroad is constructed, since in such case no inconvenience results to the public from the abandonment.

**2. SAME—INTERPRETATION.**
    An agreement between two street railroad companies "to erect, establish, and maintain a joint railway depot and terminus" impliedly prohibits the extension by either company of its road beyond the depot.

Appeal from special term, Kings county.

Action by the Prospect Park & Coney Island Railroad Company against the Brooklyn, Bath & West-End Railroad Company and the Atlantic Avenue Railroad Company for an injunction. From a judgment restraining defendants from operating the cars of the West-End Railroad across the terminal property mentioned in the complaint, into and through Thirty-Sixth street, to Fifth avenue, and from running cars over the line of the Atlantic Avenue Railroad Company in the city of Brooklyn, defendants appeal. Affirmed.

The opinion of Mr. Justice CULLEN at special term is as follows:

This action is brought to restrain the operation of the railroad of the first-named defendant, in alleged violation of a contract between the plaintiff and that company establishing a union terminal depot at Thirty-Ninth street and Fifth avenue, Brooklyn. The first question presented is the authority of the defendant the Brooklyn, Bath & West-End Railroad Company to limit its franchise or statutory powers by contract. It is doubtless true, as a general proposition, that a quasi public corporation cannot by contract relieve itself from its duties to the public, or its obligation to operate its franchise and to use its power for the public benefit. But this general proposition is subject to qualification. Under the act of 1839, a railroad company is authorized to contract with another for the use of its road. This has been held even to authorize a lease. Beveridge v. Railroad Co., 112 N. Y. 1, 19 N. E. 489; Woodruff v. Railroad Co., 93 N. Y. 616. The general railroad act also provides for compulsory interchange of facilities of connection between crossing or uniting railways. Thus it has always been the policy of this state to promote, and to some extent even to compel, agreements for some joint operation of their roads between companies whose roads have connected or united. Such agreements must necessarily infer to some extent restrictions on the broad powers and discretion as to the construction and operation of this road conferred by statute upon a railroad company. But such agreements are valid, unless the effect of the restrictions prescribed are injurious to the public. Even if the effect of the contract between the plaintiff and the defendant was to cause the abandonment of the part of the latter's road on Fifth avenue between Twenty-Sixth and Thirty-Sixth streets, that does not render the agreement illegal or against public policy, if there be no detriment to the public. People v. Rome, W. & O. R. Co., 103 N. Y. 95, 8 N. E. 369. Here the plan of a terminal depot greatly subserved public convenience. The elevated railroad on Fifth avenue was to be continued along that avenue to the new depot, into which trains of both surface railroad companies were to be brought. The Brooklyn, Bath & West-End Company also leased the Fifth avenue piece of its road to the Atlantic Avenue Railroad Company, making a continuous street railroad to the new depot. Thus far greater facilities were given the public than it could have obtained from the few blocks of the steam rail-

road abandoned. The contract between the parties is therefore valid, and the plaintiff, having made a very large outlay in pursuance of it, is entitled to have it enforced. It is therefore only to be determined what limitations that contract placed on the defendant the Brooklyn & West-End Railroad Company and the other defendant, which has now leased the road of the first-named company. Justice Bartlett decided, on the application for a temporary injunction, that the contract did not prohibit the operation of defendant's road by electricity instead of steam, it being shown that it could be so operated without interfering with the running of plaintiff's trains into the station; second, that the defendant had no right to use the ground reserved for the use of the Union Depot for the passage of trains intended to run through to other parts of the city. In this decision I entirely concur. By the agreement the two companies were "to erect, establish, and maintain a joint railway depot and terminus" at the equal expense of both companies. The parties were to divide equally the receipts at this depot, and to share equally the expense of its maintenance. While the agreement does not in express terms prohibit either company continuing its road at this point beyond the depot, I think it does so by necessary implication. If either road were to be continued beyond this point, then the station or depot would plainly cease to be the terminus of the road. It would also entirely destroy the scheme for the division of the receipts and expense of the depot provided by the agreement. A company extending its road further into the city would receive a great mass of its passengers and the great bulk of its receipts at the new terminus, and cast, consequently, the whole burden of the old station upon the other company. A personal examination of the ground and the structure erected shows that it was never contemplated (except on one contingency) to extend the two roads beyond this station. The provision in the contract inhibiting the plaintiff from extending its road or branches to the west, or the defendant extending its road or branches to the east, did not contemplate any extension at this end of the route, but extensions through the territory lying between the depot and Coney Island. The thirteenth clause of the agreement provides for running trains through the cuts to the ferry, in the event of the parties effecting a satisfactory connection or arrangement with the South Brooklyn Railroad & Terminal Company, in which case the through business of both companies to and from Coney Island was to be divided as was provided in the contract for the other business. If such connection was made, it was plainly to be shared in by both parties. There has been no proof upon the trial as to the circumstances under which this connection was made. While the agreement calls for a satisfactory arrangement, I think it does not follow that either company could refuse to agree to a reasonable arrangement, and then prohibit the other from making the connection. So, also, neither party could make, unless upon the refusal of the other to enter into it, an agreement for connection for its exclusive benefit. But there is no evidence before me to show whether the defendant conferred with plaintiff about the connection; whether the arrangement is reasonable; whether the plaintiff declined to entered into or whether the defendant refused to allow plaintiff to participate in it. I should not decide this question, except on evidence of the actual transaction between the parties. This subject must therefore be withdrawn, and left for another action, or the case must be reopened for evidence on this point. The defendants should therefore be enjoined from operating their cars or trains beyond the Union Depot, "save through the cut," and, while they may operate their road by electricity, and either by trains or by single cars, from so operating it as to interfere with the safe and ordinary running of plaintiff's trains by locomotives; the plaintiff to recover costs.

Argued before BROWN, P. J., and DYKMAN and PRATT, JJ.

Morris & Whitehouse, for appellants.

Wingate, Cullen & Miller (Geo. W. Wingate, of counsel), for respondent.

DYKMAN, J. We are entirely satisfied with the disposition made of this case at the special term, and with the reasons therefor

contained in the opinion delivered at the special term. The case depends upon a peculiar state of facts, and there seems to be no necessity for making any addition to the opinion of the trial judge, and the judgment should be affirmed upon that opinion, with costs. All concur.